Filed 2/23/23  P. v. Ayala CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B315862 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA470114) |
| v. | |
| JAMAINE MARTELL AYALA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————————

In Jamaine Martell Ayala's direct appeal of his convictions for corporal injury upon a spouse, criminal threats with personal use of a firearm, and felony vandalism, we remanded the matter for the trial court to hold a new sentencing hearing to comply with its statutory obligations under Penal Code section 1170.91.[1] (*People v. Ayala* (Apr. 8, 2021, B304033) [nonpub. opn.] (*Ayala*).) Upon remand, on October 4, 2021, the court sentenced Ayala to the middle term of three years for the criminal threats, plus the lower term of three years for the personal use of a firearm enhancement. The court also imposed concurrent middle terms for the corporal injury upon a spouse (three years) and the felony vandalism (two years).

A few days after that sentencing hearing, on October 8, 2021, the Governor signed into law a trio of bills (specified below) that amended section 1170 effective January 1, 2022. As relevant here, the bills added subdivision (b)(6) of section 1170, which provides for a presumptive lower term sentence where a defendant "has experienced psychological, physical, or childhood trauma" which "was a contributing factor in the commission of the offense." Ayala contends, the Attorney General concedes, and we agree that the matter must be remanded for a new sentencing hearing for the trial court to consider whether to impose a lower

---

[1] Penal Code section 1170.91 requires a court to consider a defendant's United States military service-related posttraumatic stress disorder (PTSD) as a factor in mitigation when imposing sentence. (Pen. Code, § 1170.91, subd. (a).) Ayala presented evidence of his service-related PTSD diagnosis.

Hereafter, undesignated statutory references are to the Penal Code.

term sentence under section 1170, subdivision (b)(6), in light of Ayala's PTSD diagnosis.

Also on October 8, 2021, the Governor signed into law Senate Bill No. 81, which amended section 1385. As relevant here, the bill added subdivision (c) of section 1385, which requires a court to consider specified mitigating circumstances (to the extent they are proven by the defendant) in determining whether to dismiss an enhancement in the furtherance of justice. Subdivision (c) applies to all sentencings occurring after January 1, 2022. We agree with the parties that the amended version of section 1385 will apply upon remand at the new sentencing hearing.

The parties also note the October 12, 2021 abstract of judgment does not accurately reflect the trial court's ruling on imposition of fines and assessments, and we order the trial court to address the issue at the new sentencing hearing on remand, as explained more fully below.

## BACKGROUND

### I. Trial and Verdicts

The following is an excerpt of the facts set forth in our opinion in Ayala's direct appeal of his convictions. (*Ayala*, *supra*, B304033.) We set forth this abbreviated summary of the evidence presented at Ayala's trial to provide context for the issues on appeal.

"Ayala and his wife Rose married in February 2016. At the time of the charged incident in June 2018, they lived in a rented, two-bedroom apartment in Los Angeles, and Rose was seven months pregnant with their first and only child. When Rose testified at trial, she explained that she and Ayala (who was out of custody on bail), were legally separated.

3

"On June 17, 2018, the date of the charged offenses, Ayala and Rose argued when she confronted him with evidence of his infidelity as he lay in bed, using his cell phone. Rose recorded audio of the argument on her cell phone because she believed Ayala would admit the infidelity and she could play the audio at their next couple's counseling session. According to Rose's testimony, Ayala did not know Rose was recording the incident. The prosecution played the audio for the jury during Rose's testimony and provided transcripts of the audio for the jury's review. [Fn. omitted.] The audio captured the words spoken during the argument and the sounds of the altercation (e.g., punches to the wall, glass breaking, and thuds), as described below.

"During the argument, Ayala got out of bed and punched two holes in a bedroom wall. Using profanity, he yelled at Rose and told her he hated her multiple times. Ayala, who was six feet six inches tall and weighed around 240 pounds, lifted Rose off the ground by placing his arms underneath her shoulders and 'slammed [her] down on the floor,' according to Rose's testimony.[2] She landed on her buttocks, in a seated position, hitting a large box containing an unbuilt crib, which pressed into her ribs. Ayala grabbed her by her hair and dragged her a couple feet. He let her go and left the room.

"As Ayala walked to the other bedroom, he broke items in the kitchen (e.g., fruit bowls) and some of Rose's glass bottles of perfume in the bathroom. Rose followed him, and they continued to argue, with him repeating multiple times that he hated her.

---

[2] "Rose was five feet five inches tall and seven months pregnant."

He told her to '[g]et up out of [his] face,' as reflected on the audio recording. Then, he threatened to punch her in the face.

"Ayala began packing his belongings to leave the apartment. He grabbed his semiautomatic firearm from a bedroom closet. Rose testified that Ayala kept the gun loaded with the safety off, so he was ready to fire at an intruder. As they continued to argue, and as Ayala was holding the gun, he said, 'I'm going to shoot you in the fucking face,' as reflected on the audio recording. According to Rose's testimony, Ayala was standing less than 10 feet away from her, facing her, and pointing the gun toward the floor at a 45-degree angle. Rose asked him to put down the gun. He told her multiple times to get out of his face. He placed the gun on the counter where he was gathering his belongings, as he packed. Rose asked him why he had the gun, and he replied, 'Shoot you if you don't get the fuck away from me,' as reflected on the audio recording. Rose was scared because of Ayala's temper and his 'experience' in the military.

"After she stopped recording the incident, Rose left the apartment. The same day, she went to a police station and reported the incident, and an officer took photos of her injuries. Her injuries included bruises on her arm, swelling around her ribs, broken capillaries on her chest, and pain all over her body. She also developed hemorrhoids and sciatica which she attributed to Ayala slamming her down on her buttocks. The prosecutor showed the jury photos that Rose took of her bruised arm and broken capillaries and a photo the officer took of her bruised arm. [Fn. omitted.]" (*Ayala, supra,* B304033, pp. 2-4.)

After hearing testimony from Rose (including the portion summarized above) and Ayala (in his defense),[3] the jury found Ayala guilty of corporal injury upon a spouse (§ 273.5, subd. (a)), criminal threats (§ 422, subd. (a)), and felony vandalism with damage over $400 (§ 594, subd. (a)).[4] The jury also found true the special allegation that Ayala personally used a firearm in the commission of the criminal threats. (§ 12022.5, subd. (a).) The jury found Ayala not guilty of assault with a firearm. (§ 245, subd. (b).)

## II.    Initial Sentencing and Direct Appeal

The reporter's transcript of the December 31, 2019 initial sentencing hearing is included in the record before us. For additional background regarding Ayala's initial sentencing, including documents referenced at that sentencing hearing, we quote from and cite to our opinion in Ayala's direct appeal of his convictions.

Prior to the initial sentencing, the prosecution filed a sentencing memorandum asserting "the trial court could impose a maximum sentence of 14 years and eight months in prison for Ayala's offenses:  the upper term of three years for the criminal threats, plus the upper term of 10 years for the firearm

---

[3] As stated above, we include a partial summary of the prosecution's evidence at Ayala's trial to provide context for the issues on appeal. We do not include a summary of all evidence presented at trial, including Ayala's testimony in his defense, because it is not material to our resolution of the issues on appeal.

[4] The prosecution presented evidence demonstrating that the damage (holes in the walls and broken bottles of expensive perfume) exceeded $400. (§ 594, subd. (b)(1).)

6

enhancement under section 12022.5, subdivision (a); a consecutive term of one year (one-third the middle term) for the corporal injury upon a spouse; and a consecutive term of eight months (one-third the middle term) for felony vandalism. The prosecution recommended the trial court instead sentence Ayala to seven years and eight months in prison: the same sentence outlined above, except the lower term of three years for the firearm enhancement.

"In urging the trial court to impose the upper term for the criminal threats, the prosecution cited the following circumstances in aggravation: (1) 'The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness' (Cal. Rules of Court, rule 4.421(a)(1));[5] (2) 'The defendant was armed with or used a weapon at the time of the commission of the crime' (rule 4.421(a)(2)); (3) 'The victim was particularly vulnerable' (rule 4.421 (a)(3)) in that Rose was seven months pregnant when Ayala committed the offenses; and (4) 'The defendant has engaged in violent conduct that indicates a serious danger to society' (rule 4.421(b)(1)). The prosecution cited one circumstance in mitigation: Ayala's minimal criminal record. (Rule 4.423(b)(1).) As set forth in the probation report, Ayala's criminal history before the current offenses consisted of two out-of-state convictions: driving under the influence of alcohol in 2011 and driving while his license was suspended or revoked in 2012.[6]" (*Ayala, supra*, B304033, p. 10.)

_____

[5] "Undesignated rule references are to the California Rules of Court."

[6] "The probation officer recommended the trial court impose an upper term sentence in this case, finding no circumstances in

7

In his sentencing memorandum, "Ayala explained he suffers from PTSD that is '70% connected to his [military] service,' as evidenced by service-related documents he attached to the memorandum. Based thereon, he requested the trial court place him on probation and order treatment as provided in section 1170.9 . . . ." (*Ayala, supra*, B304033, p. 11.)[7] He pointed out that "[p]rotecting society" is a general objective of sentencing, as set forth in rule 4.410(a)(1), and he argued he is not a threat to society, citing his lack of history of other violent crime and his record from his five years of service in the United States Army. (*Ibid*.) He also listed "other circumstances in mitigation that he argued demonstrated he was 'on a path of self-improvement,' " including that he was participating in therapy for his PTSD and he was enrolled in an online law school program. (*Id*. at p. 12.)

Prior to the initial sentencing, "Ayala filed a 'Motion to Stay Custody in Lieu of Treatment,' pursuant to section 1170.9.[8] Therein he asserted he committed the offenses in this case 'as a result of his PTSD, and/or other mental health problems,

---

mitigation and listing two circumstances in aggravation (the first and third circumstances in aggravation the prosecution included in its sentencing memorandum, as set forth above)."

[7] The probation report does not reference Ayala's PTSD diagnosis or his mental health.

[8] Under section 1170.9, if a defendant is otherwise eligible for probation and the trial court determines the defendant (1) was or is a member of the United States military and (2) may be suffering from PTSD (or other specified conditions) as a result of the person's service, the court shall consider these circumstances as a factor in favor of granting probation. (§ 1170.9, subds. (a) & (b)(1).)

stemming from his service on the front lines during the Iraq and Afghanistan war.' " (*Ayala*, *supra*, B304033, pp. 13-14.) In the motion, he described his military service and his history of PTSD. He attached to the motion, among other things, a report from a recent psychological evaluation in which the clinical psychologist concluded, " 'it is probable that [Ayala]'s behavior [in commission of the charged offenses] is best explained by chronic, combat-related PTSD, rather than to a [*sic*] reckless disregard for the welfare of others.' " (*Id.* at p. 15.)

At the December 31, 2019 sentencing hearing, the trial court (Judge Michael D. Abzug) made express findings under section 1170.9 that Ayala served as a member of the United States Military and had suffered from PTSD as a result of his service. The court found that Ayala was eligible for probation and acknowledged that his service-related PTSD was a factor in favor of granting probation.

Ayala personally addressed the court, and counsel for both sides presented argument. Thereafter, the trial court weighed mitigating and aggravating circumstances, including Ayala's service-related PTSD, and denied Ayala's request for probation.

The trial court sentenced Ayala to six years in prison: the upper term of three years for the criminal threats, plus the lower term of three years for the firearm enhancement. The court imposed concurrent upper terms for corporal injury upon a spouse (four years) and vandalism (three years). As factors in aggravation, the court noted that Ayala's convictions were of increasing seriousness and, in the commission of the offenses in this case, Ayala engaged in violent conduct that involved a threat of great bodily harm. In selecting the term of imprisonment, the court did not reference Ayala's military service-related PTSD or

9

its obligation to consider this circumstance as a factor in mitigation when imposing sentence pursuant to section 1170.91. The court declined to strike the firearm enhancement under section 12022.5, subdivision (a) because Rose was "terrified and intimidated" and Ayala's "threat to shoot her in connection with ready access to a weapon which he has been trained to use effectively is sufficient to justify the enhancement." The court imposed the low term of three years for the firearm enhancement because "this is the first weapons offense that has been committed by the defendant."

Ayala appealed from the judgment of his convictions, contending (1) the trial court abused its discretion in declining to sentence him to probation due to his military service-related PTSD, as provided in section 1170.9, and (2) the court abused its discretion in imposing an upper term sentence, without considering his service-related PTSD, as required under section 1170.91. We rejected the first contention. As to the second, we remanded the matter for a new sentencing hearing because the record did not demonstrate the court complied with its statutory obligations under section 1170.91 to consider Ayala's service-related PTSD as a factor in mitigation when selecting the term of imprisonment (separate and apart from its consideration of this circumstance as a factor in mitigation in ruling on Ayala's request for probation under section 1170.9). (*Ayala, supra*, B304033, pp. 2, 20-24.)

10

### III.   Hearing After Remand

On October 4, 2021, the trial court (Judge Henry J. Hall) held the new sentencing hearing after remand.[9]  Ayala submitted documents related to his military service-related PTSD diagnosis and treatment.  The court stated on the record the documents it had reviewed and considered, which included the reporter's transcript of and exhibits from Ayala's trial and all the parties' sentencing submissions referenced above.  The prosecutor read victim impact letters into the record, including one from Rose.  Witnesses, including Ayala's mother, made statements on Ayala's behalf.  Ayala personally addressed the court, admitting that he "said vicious things" to Rose, "used bad language," "punched the wall," and "slapped some things over the counter" during the incident that is the basis for the charged offenses in this case.  He denied touching Rose during the altercation.

The prosecutor urged the trial court to impose an upper term sentence—even considering Ayala's military service-related PTSD diagnosis as a factor in mitigation—arguing that the factors in aggravation outweigh the factors in mitigation (as listed above in connection with the initial sentencing).  Defense counsel asked the court to impose a lower term sentence, arguing Ayala's minimal criminal record and service-related PTSD outweigh the factors in aggravation.

In considering the matter in light of sections 1170.9 and 1170.91, the trial court accepted Judge Abzug's findings made at the initial sentencing that Ayala was a member of the United States military and that he suffered from PTSD as a result of his

---

[9] Judge Abzug, who had initially sentenced Ayala in this case, had retired.

service.  The court noted that Judge Abzug "did not, however, find the current offense was a result of those factors."  The court "assume[d]" Judge Abzug "implicitly made" the latter finding, and the court "adopt[ed]" it "with substantial reluctance," explaining why the court had "significant doubts about the impact of PTSD in this case."[10]

Weighing aggravating and mitigating factors, including Ayala's service-related PTSD, the trial court declined to grant probation.  In considering the term of imprisonment, the court considered Ayala's service-related PTSD as a mitigating factor as required under section 1170.91.  The court reiterated its understanding that Judge Abzug found Ayala's PTSD had "a nexus to the current crime."  As an additional mitigating factor, the court cited Ayala's "minor and insignificant" criminal record.  The court found "the most significant" aggravating factors—"the violence of the crime and the vulnerability of the victim"—were offset by the mitigating factors.  Therefore, the court imposed the middle term of two years for the criminal threats (the principal

---

[10] As set forth above, under section 1170.9, if a defendant is otherwise eligible for probation and the trial court determines the defendant (1) was or is a member of the United States military and (2) may be suffering from PTSD (or other specified conditions) as a result of the person's service, the court shall consider these circumstances as a factor in favor of granting probation.  (§ 1170.9, subds. (a) & (b)(1).)  Section 1170.91 requires a court to consider a defendant's United States military service-related PTSD as a factor in mitigation when imposing sentence.  (§ 1170.91, subd. (a).)  Neither statute requires consideration of the relation between the service-related PTSD and the commission of the charged offenses.

term), as opposed to the upper term which was imposed at the initial sentencing.

The court found it would not be in the interest of justice to dismiss the firearm enhancement, explaining: "The defendant was well-trained in the use of the firearm which he kept loaded with the safety off. [¶] The defendant introduced the gun into what was up to that point a mostly verbal domestic dispute. There was punching holes in the wall. He twice threatened to shoot the victim with the gun which has still not been recovered. [¶] Moreover, the victim was pregnant at the time so his threats to shoot her also threatened the unborn child." The court imposed the lower term of three years for the personal use firearm enhancement under section 12022.5, subdivision (a), as Judge Abzug had, because Ayala "had no prior weapons-related offense."

Thus, the trial court sentenced Ayala to five years in prison: the middle term of two years for the criminal threats, plus a consecutive term of three years (the lower term) for the firearm enhancement. The court imposed concurrent middle terms for corporal injury upon a spouse (three years) and vandalism (two years).

## DISCUSSION

Ayala contends the matter must be remanded for a new sentencing hearing, so the trial court may consider the matter in light of section 1170, subdivision (b)(6). The Attorney General agrees, as do we.

On October 8, 2021, four days after Ayala's last sentencing hearing, the Governor signed Assembly Bill No. 124 (2021-2022 Reg. Sess.; Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (2021-2022 Reg. Sess.; Stats. 2021, ch. 719, § 2), and Senate Bill

13

No. 567 (2021-2022 Reg. Sess.; Stats. 2021, ch. 731, § 1.3) into law.  The three bills amended section 1170, effective January 1, 2022.  Senate Bill No. 567 was enacted last, and it incorporated Assembly Bill No. 124's and Assembly Bill No. 1540's amendments to section 1170.  (See Stats. 2021, ch. 731, § 3(c).)  Thus, Senate Bill No. 567 became the operative legislation, and we will refer to it when referencing applicable amendments to section 1170.  (See Gov. Code, § 9605, subd. (b).)

Relevant here, Senate Bill No. 567 added current subdivision (b)(6) to section 1170, which provides in pertinent part:  "Notwithstanding paragraph (1) [directing that the court impose a sentence not to exceed the middle term of a sentencing triad except as provided in subdivision (b)(2)], and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:  [¶]  (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. . . ."  Ayala's military service-related PTSD diagnosis would be a qualifying factor for consideration under section 1170, subdivision (b)(6)(A) in determining whether to impose a presumptive lower term sentence.

At Ayala's last sentencing hearing on October 4, 2021, no one referenced the trio of bills amending section 1170 that had passed in the California Legislature, but had not yet been signed by the Governor.  The trial court, understandably, did not evaluate the matter in light of the pending amendments to section 1170.  The parties agree that these amendments to

14

section 1170 apply retroactively to nonfinal judgments, like the judgment before us in Ayala's case. (See *People v. Garcia* (2022) 76 Cal.App.5th 887, 902 ["We agree with the parties the changes effected by the new legislation [specifying Senate Bill No. 567 and Assembly Bill No. 124] apply retroactively to defendant's case as they are ameliorative in nature and therefore apply to all nonfinal appeals"].)

In his opening appellate brief, Ayala argued, "Remand for re-sentencing is not necessary as there is sufficient evidence on the record from the trial court's prior findings to compel the imposition of the low-term." He asserted that the trial court (Judge Hall) "found that appellant's PTSD, i.e. psychological trauma, contributed to the offense, and he found the aggravating and mitigating factors balance out."[11] In the respondent's brief, the Attorney General argued remand for resentencing is appropriate because (1) "the requisite findings that a court must make under sections 1170.9 or 1170.91 [the statutory provisions the court applied at the prior sentencing hearings] do not necessarily establish, as a matter of law, the 'contributing factor' requirement of 1170, subdivision (b)(6)(A)," and (2) "it is clear from the record that the sentencing court [Judge Hall] had 'significant doubts' and 'skepticism' about 'the casual relationship between the PTSD and the commission of the crime,'" quoting from the court's comments. In his reply brief on appeal, Ayala asks us to remand the matter for resentencing, apparently now agreeing with the Attorney General that this is the appropriate

---

[11] In the alternative, to the extent we were to reject this primary argument, Ayala requested in his opening brief that we remand the matter for resentencing.

15

disposition ("appellant respectfully requests that this court remand this case to the trial court for re-consideration of the appropriate base term to impose").

We conclude the matter must be remanded for the trial court to apply section 1170, subdivision (b)(6) in sentencing Ayala. At the initial sentencing, Judge Abzug did not make a finding regarding the relation between Ayala's service-related PTSD and the commission of the charged offenses in this case. At the October 4, 2021 sentencing hearing, Judge Hall, apparently believing such a finding was necessary for the application of sections 1170.9 and 1170.91, "assume[d]" Judge Abzug "implicitly made" a finding that the offenses were "a result of" Ayala's service-related PTSD and "adopt[ed]" the finding "with substantial reluctance," explaining why he had "significant doubts about the impact of PTSD in this case." Neither section 1170.9 nor section 1170.91 requires consideration of the relation between the service-related PTSD and the commission of the charged offenses, as we explained above. Thus, the issue of whether Ayala's PTSD was a contributing factor in the commission of the offenses—a consideration required under section 1170, subdivision (b)(6)(A)—was not squarely before the court at the prior sentencing hearings, and we remand the matter so the trial court may consider the matter directly in light of section 1170, subdivision (b)(6).

As the parties point out, Senate Bill No. 81 (2021-2022 Reg. Sess.; Stats. 2021, ch. 721, § 1), which added subdivision (c) to section 1385 effective January 1, 2022, was signed into law on October 8, 2021, after Ayala's October 4, 2021 sentencing hearing. Section 1385, subdivision (c)(2) requires a court to consider a list of mitigating factors (to the extent they are proven

16

by the defendant) in determining whether to dismiss an enhancement in furtherance of justice, including that the "current offense is connected to mental illness." (§ 1385, subd. (c)(2)(D).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Subdivision (c) "shall apply to all sentencings occurring after January 1, 2022." (§ 1385, subd. (c)(7).) The parties agree, as do we, that section 1385, subdivision (c) will apply at Ayala's new sentencing hearing on remand regarding imposition of the firearm enhancement. (See *People v. Sek* (2022) 74 Cal.App.5th 657, 674 ["Because any resentencing in this case will take place after Senate Bill No. 81 became effective on January 1, 2022, we agree with Sek that the court must apply the new law in any such proceeding"].)

Finally, the parties note that the October 12, 2021 abstract of judgment does not accurately reflect the trial court's ruling on imposition of fines and assessments. As reflected in the reporter's transcript and minute order from the October 4, 2021 sentencing hearing, the court stayed a $300 restitution fine under section 1202.4, subdivision (b) unless or until the prosecution proves Ayala's ability to pay. And the court waived $120 in court operations assessments ($40 per conviction) under section 1465.8, subdivision (a)(1) and $90 in court facilities assessments ($30 per conviction) under Government Code section 70373, subdivision (a), based on Ayala's inability to pay. The abstract of judgment, however, reflects that the restitution fine and above-described assessments are due. At the new sentencing hearing on remand,

17

the court shall address this discrepancy regarding the fines and assessments.

## DISPOSITION

The matter is remanded for a new sentencing hearing consistent with this opinion.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.